IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEVIN STRUSS, et al.,

    Plaintiffs,

v.

RURAL COMMUNITY INSURANCE
SERVICES, et al.,

    Defendants.

Case No. 18-2187-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiffs Kevin Struss, Struss Farms, L.L.C., and Struss & Cook Farms bring several tort claims and a breach of contract claim against defendants Rural Community Insurance Company ("RCIC")[1] and Scott Laaveg, RCIC's claims representative. These claims generally arise from a contractual relationship between the parties. Namely, RCIC insured plaintiffs' crops under several insurance contracts issued under a federal crop insurance program. The Complaint alleges that defendants breached the insurance contract, defamed plaintiffs, committed false light invasion of privacy, acted negligently, and tortiously interfered with plaintiffs' prospective business advantage or relationship.

---

[1] The Complaint names Rural Community Insurance Company as a defendant but abbreviates its name as "RCIS." Doc. 1 at 1. Defendants assert in their Reply in Support of Motion to Dismiss and Response to Plaintiffs' Counter-Motion to Compel Arbitration to Proceed Immediately (Doc. 19) that the Complaint instead names Rural Community Insurance *Services* as the organizational defendant in their Response to Defendants' Motion to Dismiss and Counter-Motion to Compel Arbitration to Proceed Immediately (Doc. 16 at 1). But defendants represent in their filings that Rural Community Insurance Company ("RCIC") and Rural Community Insurance Services ("RCIS") are "separate entities, and the separation is material." Doc. 19 at 1. Defendants explain that plaintiffs haven't sued or served RCIS. Defendants also represent that "RCIC and RCIS were separate legal entities until on or about December 31, 2017, when RCIS was merged into RCIC, and RCIS's corporate status became inactive." Doc. 19 at 2. This merger, defendants say, means that RCIC is RCIS's successor in interest. *Id.* The court thus uses the abbreviation "RCIC" throughout this order to refer to defendant Rural Community Insurance Company.

Now, defendants ask the court to dismiss the Complaint under Fed. R. Civ. P. 12(b)(3) and 12(b)(6), and, alternatively, to compel arbitration (Doc. 7). In their Response to Defendants' Motion to Dismiss, plaintiffs recite that they are willing to proceed to arbitration (Doc. 16). Separately, plaintiffs made a "counter-motion" to compel arbitration (Doc. 18).[2] For reasons explained below, the court grants, in part, the parties' requests that the court compel arbitration. *See* Doc. 18 at 4–8 (plaintiffs' Response to Defendants' Motion to Dismiss and Counter-Motion to Compel Arbitration to Proceed Immediately); Doc. 20 at 11–14 (defendants' Reply in Support of Motion to Dismiss and Response to Plaintiffs' Counter-Motion to Compel Arbitration to Proceed Immediately). But the court denies plaintiffs' request to compel arbitration to begin immediately (Doc. 18 at 4–8) and defendants' request to stay arbitration (Doc. 20 at 2–3). The court also grants plaintiffs' motion to stay proceedings in this court case (Doc. 18 at 8), including claims plaintiffs have asserted against defendant Scott Laaveg. And the court denies defendants' request to dismiss plaintiffs' extra-contractual tort claims. Doc. 20 at 4–12.

## I. Facts

The court takes the following facts from the Complaint (Doc. 1). The court accepts the facts asserted in the Complaint as true and views them in the light most favorable to plaintiffs. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

RCIC issued plaintiffs seven policies of federally reinsured crop insurance for the 2016 crop season. These policies insured plaintiffs' 2016 corn crop. Plaintiffs experienced a loss to

---

[2] Defendants never argue that plaintiffs waived their rights to arbitration when they filed a Complaint with the court. And the court can find no case authority suggesting that it must raise the issue sua sponte. The court thus does not address waiver. *See City of Udall v. Poe & Assocs., Inc.*, No. 13-1314-KHV, 2014 WL 3427297, at *3 (D. Kan. July 14, 2014) (discussing a "non-exhaustive list of factors" the court must consider when determining "whether a party has waived the right to arbitrate," and noting that the "burden of persuasion rests with . . . the party asserting waiver").

their 2016 corn crop because of drought. So, plaintiffs timely submitted claims under their seven insurance policies through their agent.

RCIC investigated the claims and issued a letter to plaintiffs on April 18, 2017. This letter denied plaintiffs' claims, and defendant Scott Laaveg signed the letter on RCIC's behalf. This letter accused plaintiffs of failing to comply with the terms of their policies, intentionally concealing or misrepresenting material facts about the policy, making misrepresentations, and committing fraud, waste, or abuse of the federal crop insurance program. The letter also accused plaintiffs—falsely, they contend—of failing to: (1) report the claims timely; (2) provide production records; and (3) explain yield variances.

The Complaint also asserts that defendants did not follow the requirements of the Risk Management Agency's Loss Adjustment Manual ("LAM"). Those requirements included questions about plaintiffs' perceived shortcomings in production records and corrected claims necessary to reflect an accurate production count. Though defendants alleged that plaintiffs had failed to provide production records for one policy and for one claim, defendants denied plaintiffs' claims on their six other policies. The Risk Management Agency ("the Agency") has interpreted its policy to permit insurers to deny claims only when an insured has failed to comply with certain terms. Also, the Complaint alleges, the Agency has interpreted its policy to prohibit insurers from using non-compliance with one policy as a reason to deny claims based on other policies. Despite this interpretation, plaintiffs contend, defendants have refused to pay claims made under plaintiffs' other six policies. No adequate justification or excuse supports defendants' refusal to pay the claims, the Complaint asserts.

Plaintiffs allege that they were required to share Mr. Laaveg's April 18 letter with their banks, lenders, suppliers, tenants, other insurers, and landlords. Plaintiffs assert that the letter

3

has harmed their reputations with those third parties and thereby caused them to sustain damages. These damages include: (1) loss of financing for their farming operations for the 2017 crop season and beyond; (2) loss of revenue from farming in 2017; (3) damaged credit; (4) loss of leases; (5) loss of farmland; (6) loss of equipment; and (7) for plaintiff Kevin Struss, mental, emotional, and physical distress.

When considering the parties' motions, the court also considers the Common Crop Insurance Policy Basic Provisions, found in 7 C.F.R. § 457.8. These Basic Provisions, published as a federal regulation, serve as the "umbrella policy" covering plaintiffs' crops. Doc. 8 at 4; *see also* Doc. 16 at 5. Specifically, the parties direct the court to Section 20(a), titled "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review." Doc. 8 at 4, Doc. 16 at 5. Section 20(a) includes the following provision:

> If [the insured] and [the insurance company] fail to agree on any determination made by [the insurance company] except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or [the insured] and [the insurance company] do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA) . . . .

7 C.F.R. § 457.8 subsec. 20(a).

## II. Analysis

To begin, the parties agree that the insurance contract between plaintiffs and RCIC contains an arbitration agreement. And both plaintiffs and defendants have asked the court to compel arbitration and stay these proceedings. Docs. 7, 18. But after that, the parties' positions diverge. First, the parties disagree about which claims should go to the arbitrator. Plaintiffs assert that only their breach of contract claims—and not their tort claims—should go to arbitration. In contrast, defendants contend that only the arbitrator has jurisdiction to decide

4

which claims are arbitrable. And second, plaintiffs ask the court to order arbitration to proceed immediately. But defendants ask this court to stay the arbitration proceedings because of a pending investigation by the U.S. Department of Agriculture Office of Inspector General ("OIG"). The court addresses these arguments, below.

### A. Scope of Arbitrable Claims and Stay of Arbitration Against Defendant RCIC

The Federal Arbitration Act ("FAA") authorizes a district court to stay litigation pending arbitration. 9 U.S.C. § 3. The FAA also confers power to a district court to compel arbitration. 9 U.S.C. § 4. A court may compel arbitration "only when satisfied that the making of the agreement [to arbitrate] is not at issue." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (internal quotation marks and citation omitted). Because plaintiffs and RCIC agree that Section 20(a) of their Common Crop Insurance Policies contains a provision requiring them to arbitrate their disputes, the court is satisfied that the formation of an agreement to arbitrate "is not at issue" here. *See Nat'l Am. Ins. Co.*, 362 F.3d at 1290 (internal quotation marks and citation omitted).

The second step of the analysis requires the court to determine whether any of the disputes in the Complaint fall within the scope of the parties' arbitration agreement. *Hedrick v. BNC Nat'l Bank*, 186 F. Supp. 3d 1189, 1191 (D. Kan. 2016) (court should compel arbitration where valid arbitration agreement exists and "the dispute before [the court] falls within the scope of the agreement" (citing 9 U.S.C. §§ 2–3)). When analyzing the scope of an arbitration provision, any "'[d]oubts should be resolved in favor of coverage.'" *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

Plaintiffs direct the court to case authorities from other federal district and state courts that have declined to compel arbitration because particular claims fell outside the scope of the

5

arbitration provision contained in 7 C.F.R. § 457.8.  Conversely, defendants argue, the arbitrator should decide whether the claims asserted in the Complaint fall within the scope of the arbitration provision.  And, as defendants assert, the Tenth Circuit's position is clear:  when parties clearly have agreed that an arbitrator will decide all issues of arbitrability, "the district court should stay[] litigation and compel all claims against [defendants] to arbitration . . . ." *Belnap v. IASIS Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017).  Our Circuit has explained that every circuit court "to address the issue [has] unanimously concluded that incorporation of the . . . [American Arbitration Association] Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability."  *Id.* at 1283 (collecting cases).

Here, the arbitration agreement between plaintiffs and RCIC provides that they will conduct arbitration under "the rules of the American Arbitration Association (AAA)."  7 C.F.R. § 457.8 subsec. 20(a).  Section R-7(a) of the AAA's rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *Commercial Arbitration Rules and Mediation Procedures*, Am. Arb. Ass'n 13 (Oct. 1, 2013), https://www.adr.org/Rules.  The court concludes that the AAA's rules govern the parties' arbitration agreement under their Common Crop Insurance Policies.  And those rules provide the arbitrator with authority to decide the scope of the arbitrable issues between the parties in this case.  Following binding Circuit precedent, the court thus holds that plaintiffs and RCIC have agreed that the arbitrator will decide the scope of their arbitration agreement.

For these reasons, the court compels plaintiffs and RCIC to arbitrate all the claims in the Complaint—and not just the breach of contract claim.  Also, the court stays all proceedings in this case between plaintiffs and RCIC pending arbitration.

Next, the court addresses the issue whether it can compel arbitration proceedings to begin immediately. As discussed earlier, the parties agreed that the AAA's rules control their arbitration agreement under the Common Crop Insurance Policies issued to plaintiffs. Those rules also provide that "[t]he arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative." *Commercial Arbitration Rules and Mediation Procedures*, Am. Arb. Ass'n 22 (Oct. 1, 2013), https://www.adr.org/Rules. And once claims are submitted to arbitration, "'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964). The court thus concludes that the arbitrator must decide whether to stay arbitration proceedings.

The court's decision to compel arbitration of all plaintiffs' claims against RCIC does not dispose of all issues presented by the parties' motions. The parties' papers also present two other disputes: (1) what action the court should take on the claims asserted against defendant Scott Laaveg; and (2) what to do with defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). The court addresses these topics in the next two sections, below.

### B. Claims Against Defendant Scott Laaveg

Plaintiffs ask the court to stay the proceedings against defendant Scott Laaveg. Doc. 18 at 3 n.1. They assert that defendants have not demonstrated that Mr. Laaveg is entitled to dismissal of the claims against him. *Id.* But defendants contend that the arbitration clause requires the court to compel arbitration and that Federal Crop Insurance Corporation ("FCIC") regulations preempt plaintiffs' state law claims for extra-contractual damages. Doc. 8 at 14–17.

"It is well settled that the district court has the power to stay proceedings pending before it and to control its docket for the purpose of 'economy of time and effort for itself, for counsel, and for litigants.'" *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The granting of the stay ordinarily lies within the discretion of the district court." *Id.* When exercising its discretion, the court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255. Specifically, "it may be advisable to stay litigation among . . . non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.3 (1983) (citing *Landis*, 299 U.S. at 254–55).

Our court typically considers five factors when weighing countervailing interests: "(1) plaintiffs' interests in proceeding expeditiously with the action and the potential prejudice to plaintiffs of a delay; (2) the burden on defendants; (3) the convenience to the court; (4) the interests of persons not parties to the litigation; and (5) the public interest." *Spears v. Mid-Am. Waffles, Inc.*, No. 11-2273-CM, 2012 WL 12837278, at *2 (D. Kan. Mar. 8, 2012) (first citing *Klaver Constr. Co. v. Kan. Dep't of Transp.*, No. 99-2510-KHV, 2001 WL 1000679, at *3 (D. Kan. Aug. 23, 2001); then citing *FDIC v. Renda*, No. 85-2216-O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987)).

Here, no dispute exists. The parties all agree that defendant Scott Laaveg is not a party to the arbitration agreement. And no party has asked the court to compel arbitration of the claims against Mr. Laaveg. But plaintiffs' Complaint alleges the same claims against RCIC and Mr. Laaveg, and the court understands defendants to argue that FCIC regulations preempt all of plaintiffs' extra-contractual tort claims—including, it seems, plaintiffs' tort claims against Mr.

Laaveg. If the court were to decide the preemption issue in plaintiffs' claims against Mr. Laaveg, that decision would have a direct effect on the outcome of the claims against RCIC. And the court has determined that the claims against RCIC must be sent to arbitration. Thus, if the court decides the claims against Mr. Laaveg before the arbitration concludes, the court could reach an outcome inconsistent with the outcome of the closely related, arbitrable claims against RCIC.

In addition, the five factors in *Spears* and other district cases favor a stay of proceedings on the claims against Mr. Laaveg. The first factor favors a stay because plaintiffs make the request for the stay, which suggests that plaintiffs are willing to abide any prejudice they may suffer because of stayed proceedings. Second, defendants have not asserted that Mr. Laaveg would have to shoulder any unfair burden because of a stay. The third factor also favors a stay. Pausing proceedings in this case until RCIC and plaintiffs have completed arbitration would save the time and effort required to litigate plaintiffs' claims against all defendants, including Mr. Laaveg, while arbitration proceeds. Finally, the fourth and fifth factors do not cut against a stay because the court is not aware of any third-party or public interest in this litigation. Because three of the five factors favor a stay, the court exercises its discretion to stay proceedings in this case against Mr. Laaveg. The court also denies any aspect of defendants' motion that seeks to dismiss the claims against Mr. Laaveg.

**C. Motion to Dismiss**

Finally, defendants' motion also asks the court to dismiss plaintiffs' Complaint. In light of the court's ruling on the arbitration issue, the court denies, without prejudice, the portion of defendants' motion seeking dismissal of plaintiffs' Complaint. Defendants may refile that motion, if necessary, after the arbitration proceedings are complete.

### III. Conclusion

The court concludes that an arbitration agreement exists between plaintiffs and RCIC. The court also determines this agreement requires the arbitrator to determine the scope of the arbitrable claims. The court thus compels arbitration between these parties and stays the proceedings here. Also, concluding that the arbitrator has jurisdiction to determine arbitration procedures, the court declines to order a stay of the arbitration proceedings. Finally, the court stays the claims asserted against defendant Scott Laaveg until the other parties have completed their arbitration proceedings.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 7) is granted in part and denied in part as described in this Order.

**IT IS FURTHER ORDERED THAT** plaintiffs' Counter-Motion to Compel Arbitration (Doc. 18) is granted in part.

**IT IS SO ORDERED.**

**Dated this 28th day of February, 2019, at Kansas City, Kansas.**

                                               **s/ Daniel D. Crabtree**
                                               **Daniel D. Crabtree**
                                               **United States District Judge**